Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff Michael Koonce

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL KOONCE,<br><br>                               Plaintiff,<br><br>         -against-<br><br>WHOLE FOODS MARKET GROUP, INC.,<br><br>                               Defendant. | COMPLAINT<br><br>Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

Plaintiff complains, upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

**Nature of the Case**

1.        Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.; and the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 290, et seq.  Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's race, color, and disability, resulting in Plaintiff's unlawful termination.  Plaintiff also alleges that Defendant retaliated against Plaintiff for engaging in protected activity.

1

**Jurisdiction and Venue**

2. Jurisdiction of this Court is proper pursuant to 42 U.S.C. §§ 12117 and 2000e-5.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 42 U.S.C. §§ 12117 and 2000e-5, as it is a judicial district in the state (New York) in which the unlawful employment practices are alleged to have been committed.

**Procedural Prerequisites**

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC with respect to the herein charges of discrimination.

7. This Action is being commenced within ninety (90) days of receipt of said Notice.

**Parties**

8. Plaintiff is African American.

9. At all times material, Defendant Whole Foods Market Group, Inc. was a foreign business corporation operating in the State of New York.

10. At all times material, Defendant was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111.

11. At all times material, Defendant was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

12. At all times material, Defendant had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

13. At all times material, Defendant had 15 or more employees for each working day in each of 20 or more calendar weeks in 2018.

14. At all times material, Defendant had 15 or more employees for each working day in each of 20 or more calendar weeks in 2019.

15. At all times material, Defendant had 15 or more employees for each working day in each of 20 or more calendar weeks in 2020.

16. At all times material, Defendant had 15 or more employees for each working day in each of 20 or more calendar weeks in 2021.

17. At all times material, Defendant was Plaintiff's employer under the ADA.

18. At all times material, Defendant was Plaintiff's employer under Title VII.

19. At all times material, Defendant was Plaintiff's employer under the NYSHRL.

20. At all times material, Defendant was Plaintiff's employer under any relevant statute(s).

**Plaintiff's Disability**

21. At all times material, Plaintiff was diagnosed with diabetes.

22. At all times material, Plaintiff's diabetes was an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, inter alia, controlling blood sugar and holding urine.

23. At all times material, Plaintiff's diabetes constituted (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or

(c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

24. At all times material, Plaintiff's diabetes, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

25. At all times material, Plaintiff was diagnosed with a concussion.

26. At all times material, Plaintiff's concussion was an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, <u>inter alia</u>, thinking, concentrating, and maintaining balance.

27. At all times material, Plaintiff's concussion constituted (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

28. At all times material, Plaintiff's concussion, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

29. At all times material, Plaintiff was qualified for Plaintiff's position.

30. At all times material, Plaintiff was capable of performing the core functions of the position.

## Material Facts

31. In or around July 2019, Plaintiff began working for Defendant at its "Supermarket" located at 480 North Bedford Road in Chappaqua, New York.

32. Plaintiff initially worked in the "Prepared Foods Department."

33. On or about January 10, 2020, a sneezeguard at the Supermarket exploded, injuring Plaintiff.

34. Plaintiff left work early and went to the hospital, where he received medical treatment.

35. Plaintiff went to see another doctor a few days later, who diagnosed Plaintiff with a concussion.

36. Plaintiff's doctor also advised Plaintiff that working in a hot environment could exacerbate the symptoms from his concussion.

37. As his doctor warned Plaintiff, the heat in the kitchen at the Prepared Foods Department frequently made Plaintiff feel dizzy.

38. Accordingly, Plaintiff requested the reasonable accommodation that he be put on leave for a time.

39. Instead, however, Defendant transferred Plaintiff out of the kitchen while he was recovering from his concussion.

40. Defendant transferred Plaintiff to work at the flowers department.

41. In or around May 2020, Plaintiff returned to the Prepared Foods Department.

42. In or around August 2020, Plaintiff spoke with Jeff (the chef at the Prepared Foods Department and Plaintiff's supervisor).

43. Plaintiff told Jeff that some mornings his concussion was still causing Plaintiff headaches.

44. As a result, Plaintiff requested the reasonable accommodation that Plaintiff be allowed to come to work a little late on occasion.

45. At the time, Jeff agreed to Plaintiff's request.

46. Plaintiff then began arriving approximately five to ten minutes late about once or twice a week.

47. However, in or around September 2020, Plaintiff met with Jeff and Sheena from human resources.

48. Jeff and Sheena wrote up Plaintiff for being late.

49. Plaintiff objected to this writeup by pointing out that Jeff had previously granted Plaintiff's request for an accommodation.

50. Jeff replied that corporate had directed Jeff to write up Plaintiff, because Plaintiff had been late more times than permitted under existing policy.

51. Sheena also told Plaintiff that he needed to call a "Callout Number" whenever he came to work late in the future.

52. Jeff suggested that Plaintiff get a formal doctor's note.

53. Accordingly, Plaintiff got a note from his doctor requesting that Plaintiff be granted the reasonable accommodation of arriving 10-15 minutes on occasion because of his disability.

54. Plaintiff provided this doctor's note to store leader Keith.

55. Plaintiff then continued arriving approximately five to ten minutes late about once or twice a week.

56. Going forward, Plaintiff called the Callout Number when he was arriving late.

57. Plaintiff made several unsuccessful attempts to get this writeup removed from his record, but, upon information and belief, this was to no avail.

58. Plaintiff's diabetes at times makes it more difficult for Plaintiff to hold his urine than it is for the average person.

59. As a result, Plaintiff sometimes needs to urinate more frequently than the average person.

60. In addition, at times, Plaintiff needs to urinate more urgently than the average person.

61. As such, at times Plaintiff needs to rush to the bathroom to urinate.

62. Unlike most of his colleagues, Plaintiff did not have a chef's coat that fit him properly, so Plaintiff would wear an apron while working in the kitchen.

63. Sometimes Plaintiff needed to urinate so urgently—because of his diabetes—that he did not have time to remove his apron before entering the restroom.

64. Whenever this happened, Plaintiff—mindful of hygiene concerns—would remove his apron afterwards and put on a new apron.

65. Thus, whenever Plaintiff entered the restroom wearing an apron, Plaintiff would not resume working in the kitchen until he was wearing a clean new apron.

66. Hence Plaintiff did not create any food-safety issues by sometimes wearing an apron into the restroom.

67. Plaintiff advised Jeff and Assistant Kitchen Manager Jason of this on several occasions, i.e., that Plaintiff's diabetes sometimes forced him to rush to the restroom while still

wearing his apron, but that Plaintiff would replace his apron with a new one upon returning from the bathroom.

68. In so doing, each time Plaintiff requested a reasonable accommodation for his diabetes.

69. In or around February or March 2021, Defendant again wrote up Plaintiff.

70. Upon information and belief, Defendant wrote up Plaintiff for failing to properly use a machine that Plaintiff had not been trained to use.

71. Following this writeup, Plaintiff complained to a supervisor in the produce department that he felt he was being unfairly targeted because of his race.

72. Plaintiff felt that he was being unfairly targeted because, upon information and belief, Defendant had recently terminated a disproportionate number of African American employees from the Prepared Foods Department.

73. Upon information and belief, over a period of about two months, approximately two African American employees had been terminated from the Prepared Foods Department.

74. Upon information and belief, there were about four African American employees at the time out of about 25 employees in the Prepared Foods Department.

75. Hence, upon information and belief, approximately half of the African American employees in the Prepared Foods Department were terminated.

76. In addition, Plaintiff felt targeted because of his race because Plaintiff felt that he was doing a good job while filling the role of more than one employee.

77. In addition, Plaintiff believed that, upon information and belief, employees who were not African American were not being written up for similar issues.

8

78. This supervisor, despite expressing some sympathy regarding Plaintiff's plight, counseled Plaintiff to, in sum and substance, "go with the flow."

79. Plaintiff felt betrayed and was outraged at the suggestion that Plaintiff should simply accept the racist environment to which Defendant was subjecting Plaintiff.

80. On or about April 27, 2021, Plaintiff met with Assistant Store Leader Tashoy and Butcher Department Manager Michael.

81. Tashoy and Michael leveled a series of accusations against Plaintiff that they wanted to document, but they claimed that they were not writing Plaintiff up formally.

82. Tashoy and Michael claimed that Plaintiff had violated a number of store policies.

83. For example, Tashoy and Michael claimed that Plaintiff had failed to remove his apron prior to entering the restroom.

84. However, as discussed above, the times that Plaintiff did not remove his apron prior to entering the restroom did not cause any hygiene problems, because Plaintiff would don a fresh, clean apron before returning to the kitchen.

85. Holding this against Plaintiff, especially after Plaintiff had repeatedly requested a related reasonable accommodation for his diabetes, would amount to disability discrimination against Plaintiff.

86. Moreover, as Plaintiff pointed out that at the time, Tashoy, upon information and belief, knew that this had been Plaintiff's practice for approximately two years—and it clearly had not been a major issue.

87. Upon information and belief, Tashoy knew this because Tashoy had seen Plaintiff do so on a repeated basis for approximately two years.

88. Still, Tashoy and Michael maintained that Plaintiff was violating store policy.

89. They also claimed that Plaintiff had violated a number of other store policies, but these were either based on supposed events that never took place, were at best based on misunderstandings, or involved selective application of rules that other employees routinely violated with impunity.

90. After this meeting, Plaintiff complained to Sheena in human resources that he was being discriminated against on the basis of his race.

91. Specifically, Plaintiff complained that he was being unfairly criticized despite working hard and often doing the work of two employees.

92. Sheena from HR replied to Plaintiff that she would look into the matter.

93. The following day, Sheena telephoned Plaintiff.

94. During their conversation, Sheena criticized Plaintiff for still talking about his concussion, saying, in sum and substance, that he was injured "more than a year ago" and that Plaintiff should have already fully recovered.

95. Plaintiff was astounded and outraged at this discriminatory comment and Sheena's failure to even address his concerns about race discrimination.

96. This also left Plaintiff feeling betrayed because he had expected his employer to protect him from discrimination.

97. Plaintiff had not yet fully recovered from his concussion and still required and utilized the accommodation of granting Plaintiff a 10-to-15-minute grace period approximately once or twice weekly.

98. On or about May 4, 2021, Defendant terminated Plaintiff.

99. Defendant terminated Plaintiff because it was fed up with his requests for accommodation, accommodating his disabilities, and Plaintiff's complaints of discrimination.

100. Defendant knew or should have known of the discriminatory and retaliatory conduct and failed to take corrective measures within its control.

101. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful and retaliatory termination.

102. Defendant retaliated against Plaintiff because Plaintiff objected to Defendant's discriminatory and unlawful conduct.

103. Defendant created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

104. The above are just some of the ways Defendant regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

105. Defendant treated Plaintiff this way due to Plaintiff's disability (diabetes).

106. Defendant treated Plaintiff this way due to Plaintiff's disability (concussion).

107. Defendant treated Plaintiff this way due to Plaintiff's race and/or color.

108. Defendant acted intentionally and intended to harm Plaintiff.

109. Defendant unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff.

110. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

111. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

112. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

113. Defendant acted maliciously, willfully, outrageously, and with full knowledge of the law.

114. As such, Plaintiff demands punitive damages.

### First Cause of Action for Discrimination
### Under the ADA

115. Plaintiff restates the foregoing allegations.

116. The ADA, at 42 U.S.C. § 12112(a), provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

117. Defendant violated the section(s) cited herein as set forth.

### Second Cause of Action for Failure to Accommodate Disability
### Under the ADA

118. Plaintiff restates the foregoing allegations.

119. The ADA, at 42 U.S.C. § 12112(b) is entitled "Construction." In relevant part, it provides:

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—
>
> . . . .
>
> (5)
>
> (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
>
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered

entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

120. Defendant violated the section(s) cited herein as set forth.

### Third Cause of Action for Retaliation
### Under the ADA

121. Plaintiff restates the foregoing allegations.

122. The ADA, at 42 U.S.C. § 12203, provides:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

123. Defendant violated the section(s) cited herein as set forth.

### Fourth Cause of Action for Retaliation
### Under Title VII

124. Plaintiff restates the foregoing allegations.

125. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

126. Defendant violated the section(s) cited herein as set forth.

### Fifth Cause of Action for Race/Color Discrimination
### Under the New York State Executive Law

127. Plaintiff restates the foregoing allegations.

128. New York State Executive Law § 296(1) provides that:

    It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

129. Defendant violated the section(s) cited herein as set forth.

### Sixth Cause of Action for Disability Discrimination
### Under the New York State Executive Law

130. Plaintiff restates the foregoing allegations.

131. New York State Executive Law § 296(1) provides that:

    It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

132. Defendant violated the section(s) cited herein as set forth.

### Seventh Cause of Action for Failure to Accommodate Disability
### Under the New York State Executive Law

133. Plaintiff restates the foregoing allegations.

134. New York State Executive Law § 296(3)(a) provides that:

    It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee,

prospective employee or member in connection with a job or occupation sought or held or participation in a training program.

135. Defendant violated the section(s) cited herein as set forth.

### Eighth Cause of Action for Retaliation
### Under the New York State Executive Law

136. Plaintiff restates the foregoing allegations.

137. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

138. Defendant violated the section(s) cited herein as set forth.

### Jury Demand

139. Plaintiff requests a jury trial on all issues to be tried.

### Request for Relief

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, the ADA, and the NYSHRL in that Defendant failed to provide Plaintiff with a reasonable accommodation for disability and discriminated against Plaintiff based on Plaintiff's disability, race, and/or color and wrongfully terminated Plaintiff due to Plaintiff's disability, race, and/or color as well as for engaging in protected activity;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices.

Dated: Rhinebeck, New York
       December 9, 2022

*/s/ Nathaniel K. Charny*
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff Michael Koonce