UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL KOONCE,  :
                  Plaintiff,  :
v.  :     **OPINION AND ORDER**
  :
  :     22 CV 10418 (VB)
WHOLE FOODS MARKET GROUP, INC.,  :
                  Defendant.  :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Michael Koonce brings this action against his former employer, defendant Whole Foods Market Group, Inc. ("Whole Foods"), asserting (as relevant to the pending motion) violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112, and the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 296, for unlawful discrimination based on his disabilities and race and failure to accommodate his disabilities.

Now pending is defendant's partial motion to dismiss the amended complaint pursuant to Rule 12(b)(6).[1] (Doc. #16).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

In July 2019, plaintiff began working for Whole Foods in the prepared foods department at its location in Chappaqua, New York. On January 10, 2020, plaintiff suffered an on-the-job

---

[1] Defendant does not move to dismiss plaintiff's retaliation claims under the ADA, Title VII, and the NYSHRL (Counts III, IV, and VIII).

injury resulting in a concussion.  When he returned to work, plaintiff was transferred to the flowers department to avoid any hot environment that could exacerbate his concussion symptoms.  Plaintiff returned to the prepared foods department in May 2020.

In August 2020, plaintiff alleges he requested permission to arrive at work approximately five to ten minutes late once or twice a week due to side effects from his concussion and related medication which impeded his ability to drive.  Plaintiff's supervisor, Jeff, allegedly agreed to this request.

In September 2020, plaintiff alleges he met with Jeff and a human resources employee named Sheena.  They disciplined plaintiff for being late more times than permitted under store policy.  Plaintiff alleges Sheena directed plaintiff to call a "Callout Number" whenever he planned to be late in the future (Doc. #15 ("Am. Compl.") ¶ 62), and Jeff instructed plaintiff to obtain a formal doctor's note.  Plaintiff obtained the requested doctor's note, used the Callout Number, and continued to arrive five to ten minutes late once or twice a week.

Plaintiff alleges he also has diabetes and needs to urinate more frequently and urgently than the average person.  Due to this condition, defendant permitted plaintiff to take bathroom breaks whenever he needed them.  While at work, plaintiff contends he sometimes needed to urinate so urgently that he was unable to remove his apron before entering the bathroom.  Cognizant of "hygiene concerns," plaintiff allegedly put on a new apron after each trip to the bathroom.  (Am. Compl. ¶ 84).  Plaintiff alleges he advised Jeff of this practice on several occasions and other supervisors saw him do this for approximately two years.

In February or March 2021, plaintiff alleges he was written up for improperly using a machine he had not been trained to use.  After this disciplinary action, plaintiff complained to a supervisor in another department that he thought he was being unfairly targeted because of his

race. Plaintiff, who is Black, alleges he felt this way because he believed employees who were not Black were not being disciplined for similar violations of store policy and because a disproportionate number of Black employees had allegedly been fired from the prepared foods department in a two-month period. Specifically, plaintiff alleges "approximately two African American employees" had been terminated from the prepared foods department (Am. Compl. ¶ 93), and there were "about four African American employees at the time out of about 25 employees" in the prepared foods department (id. ¶ 94). The supervisor to whom plaintiff complained about this race-based treatment allegedly advised plaintiff to "go with the flow." (Id. ¶ 98).

On April 27, 2021, plaintiff met with an assistant store leader and a department manager about his alleged violations of store policy, including that he had failed to remove his apron prior to using the bathroom. Plaintiff alleges he was being disciplined because of his disabilities, and any other violations of store policy "were either based on supposed events that never took place, were at best based on misunderstandings, or involved selective application of rules that other employees routinely violated with impunity." (Am. Compl. ¶ 117). After this meeting, plaintiff alleges he complained to Sheena that he was being discriminated against because of his race.

On April 28, 2021, plaintiff alleges Sheena called him and criticized him for "still talking about and using an accommodation" for his concussion that occurred "more than a year ago" from which plaintiff "should have already fully recovered." (Am. Compl. ¶ 122). Plaintiff further alleges defendant took away his accommodation to arrive late to work a few times a week.

Six days later, on May 4, 2021, plaintiff was terminated. Plaintiff alleges he was terminated because defendant "was fed up with his requests for accommodation, accommodating his disabilities, and Plaintiff's complaints of discrimination." (Am. Compl. ¶ 136).

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id.

II.  Timeliness of ADA Claims

Defendant argues all of plaintiff's allegations arising from events prior to January 14, 2021, may not be considered in assessing plaintiff's ADA claims.

The Court agrees.

It is well established that "[b]efore filing a[n] . . . ADA action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC." Thomson v. Odyssey House, 2015 WL 5561209, at *6 (E.D.N.Y. Sept. 21, 2015). A plaintiff must file a charge with the EEOC within 300 days of a defendant's alleged discriminatory acts before pursuing an ADA claim in federal court. See 42 U.S.C. § 2000e–5(e)(1)); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

Here, the parties agree plaintiff filed his EEOC charge on November 10, 2021, and the 300-day period covered by his EEOC charge thus extends back to January 14, 2021. (Def. Mem. 4; Pl. Mem. 7). And plaintiff acknowledges in his opposition he is not alleging a continuing violation under the ADA related to his concussion. (Pl. Mem. 8). Therefore, plaintiff's allegations regarding events that occurred prior to January 14, 2021, will not be considered with respect to plaintiff's ADA claims. In particular, in assessing plaintiff's ADA claims, the Court

will not consider the alleged September 2020 disciplinary action regarding plaintiff arriving late to work more often than permitted under store policy.  (Am. Compl. ¶¶ 56–61).

Accordingly, to the extent plaintiff asserts claims under the ADA with respect to the September 2020 disciplinary action, those claims must be dismissed.

III.   Disability Discrimination Under the ADA (Count I)

Defendant argues plaintiff's ADA disability discrimination claim must be dismissed because plaintiff fails plausibly to allege he is disabled as defined by the ADA.  Specifically, defendant argues plaintiff's concussion symptoms, as alleged by plaintiff, amount to mild, episodic limitations that do not significantly restrict his major life activities, and plaintiff does not allege his diabetes or his incontinence significantly restrict his major life activities.

The Court agrees.

A.   Legal Standard

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).

To state a claim for discrimination under the ADA, plaintiff must allege:  "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability."  Davis v. New York City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015).

The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1) (emphasis added).  The

Second Circuit is "careful to distinguish impairments which merely <u>affect</u> major life activities from those that <u>substantially limit</u> those activities." <u>B.C. v. Mount Vernon Sch. Dist.</u>, 837 F.3d 152, 160 (2d Cir. 2016). "[A]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." <u>Parada v. Banco Industrial De Venezuela, C.A.</u>, 753 F.3d 62, 68 n.3 (2d Cir. 2014); <u>see also</u> 29 C.F.R. § 1630.2(j)(1)(ii). But temporary or non-chronic impairments are usually not considered disabilities. <u>Zelasko v. New York City Dep't of Educ.</u>, 2021 WL 2635121, at *2 (S.D.N.Y. June 25, 2021).

Likewise, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working"; rather, "a plaintiff alleging a work-related disability must show that his condition precludes him from working in a <u>class or broad range of jobs</u>." <u>Woolf v. Strada</u>, 949 F.3d 89, 95 (2d Cir. 2020).

B.  Analysis

Here, plaintiff brings an ADA discrimination claim based on two disabilities: (i) a concussion and (ii) diabetes and related incontinence.

1.  Concussion

Plaintiff alleges lingering symptoms from his concussion and the medication he takes to treat those symptoms "impeded his ability to drive safely." (Am. Compl. ¶¶ 50, 52). However, "courts in the Second Circuit have found that driving and commuting to work are not [ ] major life activities." <u>Dechberry v. New York City Fire Dep't</u>, 124 F. Supp. 3d 131, 154 (E.D.N.Y. 2015) (collecting cases). And even if driving to work was a major life activity, plaintiff only alleges his symptoms and medication delayed him from doing so for five to ten minutes, which does not constitute a substantial limitation.

Plaintiff also alleges his concussion "substantially limited one or more of Plaintiff's major life activities within the meaning of" the ADA, including "thinking, concentrating, and maintaining balance." (Am. Compl. ¶ 32). But this allegation is a bare recital of the statutory definition of disability without reference to any specific factual allegations of a substantial limitation to a major life activity. See Zuckerman v. GW Acquisition LLC, 2021 WL 4267815, *11 (S.D.N.Y. Sept. 20, 2021) (allegations that the plaintiff's anxiety "substantially interferes with her ability to sleep, concentrate, [and] think" constitute "a formulaic recitation of a few major life activities taken from EEOC's list" and fail to plausibly allege a disability).

Accordingly, as alleged, plaintiff's concussion does not qualify as a disability under the ADA.[3]

### 2. Diabetes and Incontinence

Plaintiff's claim based on his diabetes and incontinence fares no better. Plaintiff alleges his difficulty holding urine "impeded" and "impacted" his "ability to perform the core functions of his job." (Am. Compl. ¶¶ 77–78). But, again, these allegations are insufficient to plausibly plead plaintiff's diabetes and incontinence substantially limited a major life activity. See Rider v. Gen. Motors Corp., 2006 WL 1520084, at *7 (W.D.N.Y. May 26, 2006) (finding, on summary judgment, that plaintiff's incontinence did not constitute a disability under the ADA because her incontinence merely "affected" her ability to control her waste).

---

[3] Although plaintiff alleges a doctor's note he provided to defendant constitutes a record of disability (Am. Compl. ¶ 66), because the Court determines the need to arrive five to ten minutes late to work does not substantially impair a major life activity, the doctor's note, as alleged, does not create a record of disability within the meaning of the ADA. See Levine v. Smithtown Ctr. Sch. Dist., 565 F. Supp. 2d 407, 426 (E.D.N.Y. 2008) (finding doctor's notes insufficient to constitute a record of disability when "[t]he notes do not state that the diagnosed impairments substantially or otherwise limit one or more of plaintiff's major life activities").

And nowhere does plaintiff allege his diabetes and related incontinence "precludes him from working in a class or broad range of jobs," as required by a plaintiff alleging work-related impairments. Woolf v. Strada, 949 F.3d at 95. Therefore, plaintiff fails plausibly to allege his diabetes-related incontinence is a disability under the ADA.

Accordingly, plaintiff's ADA disability discrimination claim must be dismissed.

IV. Disability Discrimination Under the NYSHRL (Count VI)

Defendant argues the NYSHRL disability discrimination claim must be dismissed because plaintiff fails to allege he was terminated because of a disability.

The Court disagrees.

A. Legal Standard

To state a claim under the NYSHRL, a plaintiff must plausibly allege "(1) [he] suffers from a disability as that term is defined under the statute, and (2) that the disability caused the behavior for which [he] was terminated." Anyan v. New York Life Ins. Co., 192 F. Supp. 2d 228, 245 (S.D.N.Y. 2002). The definition of disability under the NYSHRL is "significantly broader than the ADA definition." Id. "Any medically diagnosable impairment is sufficient" to plead a disability pursuant to the NYSHRL. Attis v. Solow Realty Dev. Co., 522 F. Supp. 2d 623, 631 (S.D.N.Y. 2007); see N.Y. Exec. Law § 292(21)(a).

"[A]t the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015). These allegations may include the temporal proximity of defendant's alleged discriminatory conduct and termination. See Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 326 (S.D.N.Y. 2020).

B. <u>Analysis</u>

Here, all of plaintiff's alleged disabilities constitute a medically diagnosable impairment for purposes of the NYSHRL. Shannon v. Verizon New York, Inc., 519 F. Supp. 2d 304, 310 (N.D.N.Y. 2007) (finding the plaintiff's incontinence failed to meet the ADA definition of disability but fit within the NYSHRL definition of disability); Gaffney v. Dep't of Info. Tech. & Telecomm., 536 F. Supp. 2d 445, 473–74 (S.D.N.Y. 2008) (finding diabetes is generally a disability under the NYSHRL); Scott v. ProClaim Am., Inc., 2017 WL 1208437, *11–12 (E.D.N.Y. Mar. 31, 2017) (finding a concussion and post-concussion syndrome is a disability under the NYSHRL).

Plaintiff also plausibly alleges his disabilities caused the behavior for which he was terminated. In particular, plaintiff alleges: (i) he was disciplined for arriving five to ten minutes late twice a week after his supervisor approved this accommodation (Am. Compl. ¶¶ 56–59)[4]; (ii) he was criticized by a human resources employee for continuing to arrive five to ten minutes late to work more than a year after his concussion and was terminated approximately six days after these comments (Am. Compl. ¶¶ 122, 137); and (iii) he was disciplined for failing to remove his apron before he used the restroom and was terminated approximately six days later (Am. Compl. ¶¶ 103–06, 135–36). These allegations describe explicit discipline and criticism because plaintiff used a supervisor-approved accommodation, specifically because of his plausibly-alleged disabilities, as well as a close temporal proximity between some of these

---

[4] Actions alleging discrimination under the NYSHRL must be filed within three years of the alleged unlawful discrimination. Mouscardy v. Consolidated Edison Co. of N.Y., Inc., 185 A.D.3d 579, 580–81 (2d Dep't 2020). Thus, while the September 2020 allegations are time-barred under the ADA, because this action was commenced on December 9, 2022 (Doc. #1), all of the allegations in the amended complaint fall within the statute of limitations for plaintiff's NYSHRL claims.

criticisms and termination of employment. Plaintiff has therefore met his burden to plead facts giving rise to a minimal inference of discriminatory intent.

Accordingly, plaintiff's NYSHRL disability discrimination claim may proceed.

V. Failure to Accommodate Disability Under the ADA and NYSHRL (Counts II & VII)

Defendant argues the ADA failure to accommodate claim must be dismissed because plaintiff fails to allege he is disabled for purposes of the ADA, and the NYSHRL failure to accommodate claim must be dismissed because plaintiff fails to plead defendant refused to make reasonable accommodations and this refusal caused his termination.

The Court agrees.

A. Legal Standard

To state a claim for failure to accommodate, a plaintiff must allege: "(1) plaintiff is a person with a disability under the meaning of the ADA [or the NYSHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McMillan v. City of New York, 711 F.3d 120, 125–26 (2d Cir. 2-13); Berger v. N.Y.C. Police Dep't, 304 F. Supp. 3d 360, 369 (S.D.N.Y. 2018) (applying same standard to NYSHRL claims for failure to accommodate). In addition, a plaintiff must allege "the connections between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action." Natofsky v. City of New York, 921 F.3d 337, 352 (2d Cir. 2019).

B. Analysis

As discussed above, plaintiff fails to allege he is disabled under the definition provided in the ADA. Thus, plaintiff's ADA failure to accommodate claim must be dismissed as well.

11

With respect to the NYSHRL claim, plaintiff fails to plead defendant refused to make reasonable accommodations and the refusal caused his termination. According to plaintiff, there were two instances of defendant's failure to make reasonable accommodations.

First, plaintiff alleges defendant rescinded a reasonable accommodation related to his concussion. On April 28, 2021, plaintiff asserts a human resources employee named Sheena called plaintiff and criticized him, stating "the was injured 'more than a year ago' and that Plaintiff should have already fully recovered." (Am. Compl. ¶ 122). But plaintiff fails to plausibly plead a nexus between this alleged failure to accommodate and his termination. See Natofsky v. City of New York, 921 F.3d at 352. That is, plaintiff fails to allege facts indicating that his inability to arrive at work five to ten minutes late during the six-day period between his conversation with Sheena on April 28, 2021, and his termination on May 4, 2021, resulted in his termination. In fact, plaintiff alleges the day prior to his conversation with Sheena, his supervisors disciplined him for "violat[ing] a number of other store policies." (Am. Compl. ¶ 117). Thus, plaintiff's allegations are insufficient to state a claim for unlawful discrimination based on a failure to accommodate.

Second, plaintiff alleges defendant failed to make a reasonable accommodation related to his diabetes and incontinence. Plaintiff acknowledges defendant granted him the reasonable accommodation of taking bathroom breaks whenever he needed them due to this disability. However, plaintiff alleges he "advised" his superiors that his disability "forced him to rush to the restroom while still wearing his apron, but that [he] would replace his apron with a new one upon returning from the bathroom," and "[i]n so doing, each time Plaintiff requested a reasonable accommodation." (Am. Compl. ¶¶ 87–88). Plaintiff further alleges his superiors "knew that this had been Plaintiff's practice for approximately two years." (Id. ¶¶ 109–10).

12

The amended complaint is devoid, however, of any allegation that plaintiff directly requested he be able to wear his apron to the bathroom and replace it with a new apron before returning to his station.  See Puccinelli v. S. Conn. State Univ., 2023 WL 4838291, at *9–10 (S.D.N.Y. July 28, 2023) (dismissing failure to accommodate claim because plaintiff only "vaguely references" a need or request for accommodations).  Instead, according to the amended complaint, plaintiff engaged in this conduct and informed his supervisors that he did so, but never actually requested permission to engage in it.

It is plaintiff's responsibility to affirmatively request an accommodation before bringing a claim.  Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006) ("[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.").  Without any allegation that he actually requested this accommodation, any claim that he was denied it must be dismissed.

Accordingly, plaintiff's NYSHRL failure to accommodate claim must be dismissed.

VI.   Race Discrimination Under the NYSHRL (Count V)

Defendant argues the NYSHRL race discrimination claim must be dismissed because plaintiff fails to plead the alleged discrimination occurred because of his race.

The Court disagrees.

A.   Legal Standard

To state a claim for race discrimination under the NYSHRL, a plaintiff "must plausibly allege that (1) the employer took adverse action against him and (2) his race . . . was a motivating factor in the employment decision."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015).  A plaintiff satisfies the first prong by alleging an adverse employment action,

which entails "a materially adverse change in the terms and conditions of employment." Id. at 85.

As to the second prong, "at the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85.  Namely, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id. at 87.  Examples of scenarios in which an inference of discrimination could arise include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group[;] or the sequence of events leading to the plaintiff's discharge." Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015).

B.   Analysis

Here, plaintiff's allegations satisfy the minimal burden necessary to state a race discrimination claim under the NYSHRL.

First, plaintiff has sufficiently alleged he suffered an adverse employment action because his employment was terminated.

Second, plaintiff sufficiently alleges facts giving rise to a plausible inference that racial discrimination was a motivating factor in defendant's decision to terminate him.  In particular, plaintiff alleges:  (i) defendant unfairly targeted plaintiff for store policy violations based on his race because employees who were not Black were not disciplined for similar issues (Am. Compl. ¶¶ 90–91, 97); (ii) defendant recently terminated a disproportionate number of Black employees

14

from the prepared foods department in which plaintiff worked, firing two out of four Black employees in a two-month period (id. ¶¶ 92–95); and (iii) when plaintiff complained about the alleged race-based discrimination to his superiors, he was ignored or told to "go with the flow" (id. ¶¶ 98–99, 123).  These allegations, taken as true, are sufficient to support a minimal inference of race-based discriminatory motivation.

Accordingly, plaintiff's NYSHRL race discrimination claim may proceed.

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART.

Plaintiff's claims for disability discrimination under the ADA (Count I) and failure to accommodate under the ADA and the NYSHRL (Counts II and VII) are dismissed.  All other claims (Counts III, IV, V, VI, and VIII) shall proceed, except that plaintiff's allegations relating to events prior to January 14, 2021, will not be considered in assessing plaintiff's ADA claims.

By December 15, 2023, defendant shall file an answer to the amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion.  (Doc. #16).

Dated: December 1, 2023
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge